UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

SHIPWRECK TREASURE VENTURES CORP,
            Debtor

Case No.: 3:25-bk-03374-JAB
Chapter 11
*SubChapter V*

_____/

**DEBTOR IN POSSESSION'S AMENDED EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363**
*(Various Merchant Cash Advances and Secured Lenders)*

Debtor-in-Possession, Shipwreck Treasure Ventures Corp, (the "Debtor"), by and through its undersigned proposed counsel, hereby files its Amended Emergency Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. § 363, and in support thereof, respectfully states as follows:

**JURISDICTION**

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicate for the relief requested in this Motion is 11 U.S.C. §§ 105 and 363 and Rule 4001(d)(1)(D) of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

3.    On September 23, 2025, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"). Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtor is operating its business and managing its affairs as a debtor-in-possession. As of the date hereof, no trustee, examiner, or statutory committee has been appointed in this Chapter 11 case.

4.    The Debtor's primary business is the operation of the St. Augustine Shipwreck Museum, located at 46 Charlotte Street, St. Augustine, FL 32084.

5.    The Debtor has financed its operations on a cash basis and via business credit cards. The Debtor has 4 pre-petition merchant cash advances/lenders that have a lien on the Debtor's cash and

receivables. Those lenders are LCF Group, Inc. ("LCF"), JRG Funding ("JRG") and Merchant's Cash Group ("Merchant"), High Octane Funding ("Octane"). The Debtor relies on current revenues to fund its operations.

6. The Debtor has financed its operations on a cash basis. The Debtor relies on current revenues to fund its operations.

7. The Debtor has filed this case to restructure its debt and pursue a Chapter 11 reorganization plan.

8. A list of creditors claiming a security interest in Debtor's rents, accounts, receivables, chattel paper, contracts, documents, cash, bank accounts, etc. ("Cash Collateral") are below.

| Entity | Collateral Encumbered | Date of First Filing |
|---|---|---|
| The LCF Group, Inc. Approx Balance - $5,000 | All assets owned and/or acquired, including receivables | 03/29/2024 |
| JRG Approx Balance - $50,000 | All assets owned and/or acquired, including receivables | 5/12/2025 |

9. The Debtor's approximate outstanding balances owed to Merchant is $65,000 and Octane is $15,000).

10. Apart from the Cash Collateral Lenders, the Debtor also has several service providers which it struggles to remain current with, and other unsecured debt which it unable to pay.

11. The Debtor requires the use of cash collateral to fund all necessary operating expenses of the Debtor's business.

12. The Debtor will suffer immediate and irreparable harm if it is not authorized to use cash collateral to fund the expenses set forth in the Budget. Absent such authorization, the Debtor will not be able to maintain and protect its business.

## RELIEF REQUESTED

13. By this Motion, the Debtor seeks the entry of an Order authorizing its use of cash collateral pursuant to 11 U.S.C. § 363, Federal Rules of Bankruptcy Procedure 4001(b)(2) and Local Rule 4001-3; setting the time for a final hearing and objection deadline for this Motion; and granting such other and further relief as is just and proper.

14. As set forth in the budget, the Debtor requires the use of cash collateral to fund all necessary operating expenses of the Debtor's business.

15. The Debtor acknowledges that the Cash Collateral Lenders may have liens on the cash collateral in accordance with 11 U.S.C §§ 361 and 363. In connection therewith, the Debtor seeks the use of Cash Collateral in the ordinary course of business.

## CASH COLLATERAL AND THE RELIEF SOUGHT BY THE DEBTOR

16. The Debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code, which provides that:

> If the business of the debtor is authorized to be operated under section … 1108 … of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, any may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363 of the Bankruptcy Code. See 11 U.S.C. § 1107(a).

17. When a Chapter 11 debtor-in-possession is authorized to operate its business, it may use property of estate in ordinary course of business, but is prohibited from using cash collateral absent consent of the secured creditor or court authorization. *In re Kahn*, 86 B.R. 506 (Bankr. W.D. Mich.

3

1988); *In re Westport-Sandpiper Associates Ltd. P'Ship*, 116 B.R. 355 (Bankr. D. Conn. 1990)(debtor may not use cash collateral unless entity that has interest in it consents or debtor proves that interest of the entity is adequately protected).

18.     "Cash collateral" is defined by the Bankruptcy Code as, "cash, negotiable instruments, documents of title securities, deposit accounts or other cash equivalents whenever acquired in the which the estate an entity other than the estate have an interest…" 11 U.S.C. § 363(a). Any cash collateral generated by the Debtor may constitute the cash collateral of the alleged secured creditors.

19.     Further, the Debtor proposes to use the Cash Collateral in accordance with the terms of the Budget. The Debtor also requests that it be authorized: (i) to exceed any line item on the budget by an amount up to ten (10) percent of each such line item; or (ii) to exceed any line item by more than ten (10) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10) percent in the aggregate of the aggregate of the total budget.

## APPLICABILITY AUTHORITY FOR RELIEF REQUESTED

**A.     The Court Should Enter an Order Authorizing the Continued Use of Cash Collateral Because the Debtor is Providing the Cash Collateral Lenders with Adequate Protection.**

20.     The Bankruptcy Code does not define "adequate protection" but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditors' interest in such property. See 11 U.S.C. § 361.

21.     Adequate protection is to be determined on a case-by-case factual analysis. *See Mbank Dallas, N.A. v. O'Connor* (*In re O'Connor*), 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985). For example, in O'Connor, the court held that "[i]n order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard." *O'Connor*, 808 F.2d at 1936 (citations omitted).

See also *In re Quality Interiors, Inc.*, 127 B.R. 391 (Bankr. N.D. Ohio 1991) (holing that the granting or a replacement lien provided adequate protection).

22. Adequate protection is meant to ensure that the secured creditors receive the value for which it originally bargained pre-bankruptcy. *Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994) (citing *In re O'Connor*, 808 F.2d 393, 1396-97 (10th Cir. 1987)). Courts have noted that the essence of adequate protection is the assurance of the maintenance and continued responsibility of the lien value during the interim between the filing and the confirmation. *In re Arrienes*, 25 B.R. 79, 81 (Bankr. D. Or. 1982). The purpose of adequate protection requirement is to protect secured creditors from diminution of value during the use period. *See In re Kain*, 86 B.R.506, 513 (Bankr. W.D. Mich. 1988); *In re Becker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

23. In the instant case, adequate protection provided to the Cash Collateral Lenders includes a replacement lien on the Debtor's receivables and the Debtor's projected positive cash flow.

24. Section 361(2) of the Bankruptcy Code expressly provides that the granting of a replacement lien constitutes a means of providing adequate protection. 11 U.S.C. § 361(2). In the instant case, granting the Cash Collateral Lenders a replacement lien on post-petition collateral to the extent its prepetition collateral is diminished by the Debtor's use of cash collateral provides CAN with adequate protection. *See e.g., O'Connor*, 808 F.2d 1393; *In re Coody*, 59 B.R. 164, 167 (Bankr. M.D. Ga. 1986); *In re Dixie-Shamrock Oil & Gas, Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984).

**B.     The Use of Cash Collateral Will Preserve the Debtor's Going Concern Value Which Will Inure to the Benefit of the Cash Collateral Creditors.**

25. The continued operation of the Debtor's business will preserve its going concern value, enable the Debtor to capitalize on that value through a reorganization strategy, and ultimately facilitate the Debtor's ability to confirm a Chapter 11 plan. If the Debtor is not allowed to use cash collateral, it will be unable to operate and potentially cause harm to the property.

26. The Debtor will use the cash collateral during the interim cash collateral period to pay normal business expenses, payroll, rent, utilities and otherwise maintain and protect its property.

27. It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor has a going concern.

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use cash collateral in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).

28. Accordingly, courts authorize the use of cash collateral to enhance or preserve the debtor's going concern value. For example, in *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa. 1982), the Court allowed a debtor to use cash collateral where the secured party was undersecured, finding that the use of cash collateral was necessary to the debtor's continued operations and the creditor's secured position can only be enhanced by the continued operation of the debtor's business. Id. at 460; *see also Federal Nat. Mort. v. Dacon Bolingbrook Assoc.*, 153 B.R. 204, 204 (N.D. Ill. 1993) (security interest protected to extent debtor reinvested rents in operation and maintenance of the property); *In re Constable Plaza Assoc.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor's reinvestment of rents to maintain and operate office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage); *In re Dynaco Corp.*, 162 B.R. 389, 395-96 (Bankr. D. N.H. 1983)(finding that the alternative to the debtor's use of cash collateral, termination of its business, would doom reorganization and any chance to maximize value for all creditors); *In re Karl A. Neise, Inc.*, 156 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on postpetition property acquired by debtor, debtors can use cash collateral in the normal operation of their business).

29. If the Debtor cannot use cash collateral, it will be forced to cease operations. By contrast, granting authority will allow the Debtor to maintain operations and preserve the going

concern value of its business which will inure to the benefit of any secured creditors and all other creditors.

30. The Debtor believes that use of Cash Collateral pursuant to the terms and conditions set forth above is fair and reasonable and adequately protects the secured creditor in this case. The combination of: (i) the Debtor's ability to preserve the going concern value of the business with the use of cash collateral; and (ii) providing the Cash Collateral Lenders with the other protections set forth herein, adequately protects its alleged secured position under § 361(2) and (3). For all of the reasons stated above, this Court's approval of the Debtor's use of cash collateral is proper herein.

31. The Debtor believes that the approval of this Motion is in the best interest of the Debtor, its creditors and its estate because it will enable the Debtor to (i) continue the orderly operation of its business and avoid an immediate total shutdown of operations; (ii) meet its obligations for necessary ordinary course expenditures, and other operating expenses; and (iii) make payments authorized under other orders entered by this Court, thereby avoiding immediate and irreparable harm to the Debtor's estate.

**CERTIFICATE OF NECESSITY AND REQUEST FOR EMERGENCY HEARING**

32. The Debtor requests that the Court hold an emergency hearing on the Debtor-in-Possession's Emergency Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. § 363 to avoid immediate and irreparable harm to the estate.

33. The undersigned attorney certifies that this request is being made in good faith and is based solely upon the factual circumstances existing at the time of the filing of the motion.

WHEREFORE, the Debtor respectfully requests that this Court enter an order (a) authorizing the Debtor's use of cash collateral in accordance with the attached Budget and provide related adequate

protection; (b) granting the replacement liens set forth above in connection with the use thereof; and (c) granting such other and further relief that is just and proper.

Respectfully submitted this 29th day of September, 2025.

/s/ Thomas C. Adam
Thomas C. Adam
Florida Bar No. 648711
2258 Riverside Avenue
Jacksonville, FL 32202
(904) 329-7249 Telephone
(904) 606-1245 Facsimile
tadam@adamlawgroup.com
*Counsel to Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the *Amended Emergency Motion For Authority To Use Cash Collateral Pursuant To 11 U.S.C. § 363* has been served on this 29th day of September, 2025 by electronic transmission upon all parties having entered an appearance in this case via the Court's CM/ECF system and via first class U.S. mail, postage prepaid on the following parties stated below, and via first class U.S. mail, postage prepaid on the parties on the attached mailing matrix.

**JRG Funding**
80 Maiden Lane
New York, NY 10038

**Merchant's Cash Advances**
5745 SW 75th St. #110
Gainesville, FL 32608

**High Octane Funding**
633 NE 167th St. #1205
Miami, FL 33162

**The LCF Group, Inc.**
3000 Marcus Avenue, Ste 2W15
Lake Success, NY 11042

| In re: Shipwreck Treasures | Case No.: 3:24-bk-03374-JAB | | |
|---|---|---|---|
| | | | |
| **CASH COLLATERAL BUDGET September 25 -** | | | |
| | | | |
| **REVENUE** | **Amount** | | |
| Gross Revenue | $25,000.00 | | |
| Cost of Goods Sold | $3,500.00 | | |
| *Net Revenue* | | $21,500.00 | |
| | | | |
| **EXPENSES** | | | |
| Advertising & Marketing | $300.00 | | |
| Bank Charges & Fees | $200.00 | | |
| Car & Truck | $600.00 | | |
| Contractors | $3,800.00 | | |
| Equipment Leasing | $375.00 | | |
| Insurance | $1,860.00 | | |
| Job Supplies | $40.00 | | |
| Merchant Fees | $450.00 | | |
| Office Supplies & Software | $100.00 | | |
| Sub V Trustee | $1,000.00 | | |
| Payroll Expenses | $4,000.00 | | |
| Rent & Lease | $4,900.00 | | |
| Repairs & Maintenance | $100.00 | | |
| Taxes & Licenses | $80.00 | | |
| Utilities | $2,200.00 | | |
| *Total Expenses* | | $20,005.00 | |
| | | | |
| **NET** | | | $1,495.00 |

